## FRANCIS KATHEMAN v. GENERAL MUTUAL INSURANCE CO and CRESCENT MUTUAL INSURANCE CO.

In an action on a valued policy of insurance the plaintiff is not put on proof of interest in the object insured by a plea of the general issue.

When the shipper has insured the freight, unless there is a special denial in the answer that he paid the freight in advance the fact need not be proved.

Freight paid in advance is a lawful object of insurance, and the underwriter cannot avoid liability on the ground that freight thus paid in advance might be recovered back in consequence of the loss of the cargo.

APPEAL from the Third District Court of New Orleans, *Kennedy* J.

*P. E. Bonford & T. W. Collins*, for plaintiff and appellant.  *M. M. Cohen, E. Briggs* and *George Eustis*, for defendants.

MERRICK, C. J.  This suit is brought against the defendants upon two valued policies.

In the policy of the General Mutual Insurance Company the insurance is stated to be upon goods and merchandise valued at "eighty-seven hundred dollars."  In another part of the instrument the insurance is declared to be on

"½ of merchandise, valued at $5500................to amount of $2750.
½ of freight,          "        $3200................     "        $1600.

$4350.

In case of loss or damage under this insurance the settlement to be on the principle of salvage loss. A similar policy with the Crescent Mutual Insurance Company" to the extent of "forty-three hundred and fifty dollars." The passages marked with inverted commas were *written* in the blanks of the printed contract.

The policy of the Crescent Mutual was similar, with the exception that it contained no reference to the policy of the General Mutual Insurance Company.

The voyage contemplated was from this city to Monterey, California, on a schooner called the Louisiana.

The plaintiffs in their petition allege the sea-worthiness of the schooner, and their interest in the merchandise shipped, and aver that " they did, through their agent, *T. C. Kathman*, cause said goods and merchandise and the amount of the freight, money paid in advance for carrying the same, to be insured in said companies."

Among other things, the petitioners further allege, in substance, that the schooner became leaky at her arrival at the Cape de Verde Islands, and put into Port Praya, where she was caulked ; that in pursuing her voyage from thence she encountered storms in weathering Cape Horn, by which the vessel was so much damaged that she was obliged, for safety, to put into the port of Valparaiso on her arrival in order to repair damages and be enabled to proceed on her voyage ; that the captain, in order to convert the greater part of the proceeds of the vessel and cargo to his own use, barratrously exaggerated the injury which the vessel had sustained, caused repeated surveys to be made as a pretext for ruinous delays, thus purposely involving said vessel in debt, and fraudulently using said indebtedness as an excuse for causing or permitting the sale of the cargo and vessel to meet such indebtedness, and having by said fraudulent means caused the sale of the said vessel and cargo to take place, he obtained payment to himself of the balance of proceeds amounting to several thousand dollars, and having thus accomplished his criminal design he absconded and has not been heard of since, and that plaintiffs on learning the facts abandoned to the underwriters.

The defendants simply pleaded the general issue.

The Judge of the lower court being of the opinion that as to the cargo there was a partial loss by sea damage, converted into a total loss by the barratry of the master, and that no abandonment was necessary, but also being of opinion, as to the freight, that there was no proof that the plaintiffs had ever paid it, or, that, if paid, the same was not to be returned if the goods were not delivered according to the bill of lading ; he gave judgment in favor of the plaintiff to the amount of the merchandise specified in the policies respectively, and against them as to the items of freight.

The plaintiffs appealed, their appeal being returnable on the first Monday of November, 1855. The defendants filed on the 28th day of October, 1856, nearly a year after the day the appeal was made returnable, an answer to the appeal, praying for an amendment of the judgment in their favor.

The plaintiffs and appellants contend that, inasmuch as there is no answer in the record denying the interest of the plaintiffs in the object of the policy which the parties have respectively valued, they are not now at liberty to contest the same, and in support of this position the plaintiffs cite the case of *Kennedy* v. *The New York Life Insurance Company*, 10 An., 809.

The defendants reply that this last case ought not to be considered as authority, inasmuch as it violates the well-settled rules of pleading as to cases arising under the law of insurance, and the court is requested to re-consider the case, and if it be found wrong to overrule the same.

That case being out of the way then, the defendants urge that the plaintiffs were not interested in *the freight*, and that the warranty of sea-worthiness was violated, inasmuch as, in the short run to the Cape de Verde Islands the vessel, without any stress of weather, required caulking, and at Valparaiso she was found to require coppering a-new, and that there is no proof that the premium was paid and that there was a deviation. The earnestness with which the counsel for the defendants have contested the correctness of the rule laid down in the case of *Kennedy*, namely : that the defendants will not be permitted, in an insurance upon lives and in a valued policy, to put the plaintiff upon proof of the interest of the insured in the life insured, or the interest in the object valued in the valued policy without specially pleading such want of interest, induces us to reconsider the question and review the reasons upon which that decision rests.

Counsel, as much alive to the interests of an insurance company as the company itself, would hardly assert that there was to be one rule of proceeding for the ordinary suitor in our courts and another for the insurance company, and he would only expect that in the event there is something different from ordinary contracts in the contract of insurance, that his case should be excepted from the rules governing other cases in such particular.

The learned counsel, therefore, for the defendants, candidly admit that as a general proposition it is undeniably true that " our law presumes every contract which does not appear illegal or immoral on its face to be made for a valid cause and upon a sufficient consideration, and it is incumbent upon him who would put the opposite party upon the proof of the sufficiency of the cause to do so specially by his pleadings," but they say that by Article No. 2952 of the Civil Code actions to recover the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun, foot, horse and chariot racing, have been taken away, and, inasmuch as an insurance of an object in which the assured has no interest, is but a wager, therefore it is necessary for the plaintiff to allege and prove interest in order to take his case out of the general rule established by law, and show that his contract is lawful.

This reasoning appears to us to be fallacious :

First—There are but few contracts more useful or of more frequent occurrence than contracts of insurance. When we consider the frequency of these contracts and the magnitude of the interest involved in them, the number of companies chartered under the general law of the State, the number of the special charters formerly granted by the Legislature, and the number of agencies established in this city by companies from other States, and when we further consider that the common course of dealing of men with each other is to act honestly and not fraudulently ; we say when we consider these things we may safely affirm that the contract of insurance is, in the eye of the law, presumed to be a *bona fide* contract and not a fictitious one ; and that as a general rule the contract is real, and that the wager policy is the rare case and the exception to the general rule. The law says no action is given to recover money won by a bet, but the contract of insurance becomes a bet only when it is ficti-

# 38 SUPREME COURT OF LOUISIANA,

KATHMAN
v.
INSURANCE Co's.

tious and not real. It is, therefore, more logical and more consonant to the spirit of our jurisprudence to say that the contract of insurance is lawful, and he who would show it to be unlawful should allege its illegality. *Ut res magis valeat quam pereat.*

Second—It does not necessarily follow that because a thing is proper to be alleged in the petition that, therefore, the defendant by his general denial can put the plaintiff upon proof of it.

The plaintiff who would sue in a representative capacity, such as heir, administrator, executor, &c., must allege that capacity, but he is not bound to prove it unless specially denied. The party suing upon a written contract must allege its execution, but he is not compelled to prove it unless it is specially denied. This is also illustrated by the English law (under the new rules of pleading), on the subject before us. There should (in England) be some averment of interest in the declaration, but if the defendant would dispute the interest he must in his plea traverse it *modo et forma* as alleged. 2 Arnould, 1264, 1289.

So under our law, if upon a promissory note the plaintiff in his petition alleges its consideration it will not dispense the defendant from putting the consideration at issue by his pleadings, if he relies upon a want of consideration for his defence.

Much more, therefore, when the contract set up in plaintiff's petition appears on its face to be illegal, ought the defendant who would take advantage of its illegality specially to plead it. *Harvey* v. *Fitzgerald*, 6 M. R., 549.

It is true that the law of insurance depends upon that general custom adopted by commercial usage which has been sanctioned by our courts, and not upon any positive provisions of the lawgiver. But that by no means exempts this class of contracts from the law of the *forum* where they are sought to be enforced, any more than commercial contracts, such as promissory notes and bills of exchange, are exempt from the like law.

It being admitted that in an open policy of insurance a party can only recover to the extent of the loss which he proves he has sustained, the question arises what is the effect of a valuation in a policy of insurance? *Mr. J. Lawrence* answers the question in the case of *Shawe* v. *Felton*, 2 East. 109, in these words: "The effect of a valued policy was not to preclude the underwriters from showing that the assured had no interest, but that in order to avoid disputes as to the quantum of the assured's interest the parties agreed that it should be estimated at a certain value." See also 1 Arnould, 307. Then the object is to relieve the assured from the necessity of proving the extent of his interest in the object of which the valuation has been made. 1 Bouvier Inst., 1223, 1230; 2 Greenleaf, 381. It is unreasonable to allow the underwriter who has the money of the assured, the consideration for his engagement, in his hands and who has agreed with the assured as to the value of the thing insured to govern both parties in case of a loss, to contest his engagement without specially traversing the interest of the party assured by his pleadings." The assured may well suppose, until put upon his guard by a special allegation to that effect, that his interest in the thing insured is recognized by the receipt from him of the premium by the underwriter, and his agreement as to the amount of liquidated damages to be allowed in case of a loss. But it is said that the answer in this case was drawn out by an experienced, accurate and precise practitioner, one well versed in this branch of the law, and that if the

rule adopted in the case of *Kennedy* v. *The New York Life Insurance Co.* be KATHMAN
extended to cases of valued policies it will take the insurance companies by *v.*
surprise. While we acknowledge the ability of the experienced counsel who INSURANCE CO'S.
drafted the answer in this case we cannot admit that the reasoning has very
great force. The learned counsel may have been led into error by the too close
pursuit of the common law authorities, applicable as they are to entirely dif-
ferent rules of pleading, and evidence so far modified by such pleadings. But
counsel of equal experience have heretofore thought it necessary to plead
specially such defences as tended to invalidate the contract of insurance for
such a want of interest or other cause. See 3 R. R. 424; 4 R. R. 234; 11 Rob.
255; 11 R. R. 222; 2 R. R. 267, 457; 1 R. R. 192, 438; 8 R. R. 443; 10 R. R.
165; 6 An. 432, 762; 10 An. 738.

The argument attempted to be drawn from the practice of certain members
of the profession is therefore inconclusive. The maxim of *communis error facit
jus* does not apply. So long as parties are willing to try their cases, and admit
evidence upon defective pleadings, this court will not insist upon strict rules
but decide upon the evidence adduced. Still the court has not sanctioned a
loose practice even in regard to the commercial contract of insurance. In the
9th An. Rep., 591, in the case of *Matthews* v. *The General Mutual Insurance
Co. of New York* this court said, " Under the English practice, which has cer-
tainly not often been more indulgent than ours, the plea of the general issue to
an action on a policy of insurance was formerly sufficient to let in evidence of
illegality, misrepresentation, breach of warranties, or almost every matter which
would discharge underwriters; 2 Arnould Ins. 1286. By the new rules of
pleading adopted in the King's Bench in 1834, matters showing the transaction
to be void or voidable on the ground of fraud must be specially pleaded. In
the present case notice of the intention to prove fraud on the part of the assured
*was given in defendant's answer. Probably it would have been better to specify
the mode and circumstances of the fraud.* But if the plaintiff was surprised by
the evidence offered, the discretion of the court of the first instance could have
afforded him relief by granting him a continuance." We, therefore, conclude
that there is no reason to disturb the doctrine laid down in the case of *Kennedy*
against *The New York Life Insurance Co.*, and that under the general issue
in this case the defendants cannot, *for the want of testimony* on that part of
plaintiff's case, contest his interest in the object insured. The same principle
governs as to the objection that the premium was not paid. As it regards the
question of sea-worthiness and deviation, these questions are open so far as the
testimony which has been offered by the plaintiffs tends to establish the one or
the other.

We do not think the caulking of the schooner at the Cape de Verde Islands,
or the condition of her copper at Valparaiso sufficient to rebut the presumption
of sea-worthiness at the commencement of the voyage. The detention at Val-
paraiso was barratrous, and the defendants by their warranty against the barra-
try of the master are precluded from setting up the same as a deviation. The
judgment of the lower court must be reversed, and judgment rendered for the
whole amount of the insurance.

It is, therefore, ordered, adjudged and decreed by the court that the judg-
ment of the lower court be avoided and reversed, and this court now proceeding
to render such judgment as ought to have been rendered by the lower court
do order, adjudge and decree that the plaintiffs do have and recover judgment

KATHMAN
v.
INSURANCE Co's.

against the defendants, the General Mutual Insurance Company of New York, for the sum of four thousand three hundred and fifty dollars, with legal interest thereon from the 24th day of March, 1853, till paid; and also against the defendant, the Crescent Mutual Insurance Company of New Orleans, for the like sum of money, viz—four thousand three hundred and fifty dollars, with the like legal interest from the said 24th day of March, 1853, until paid, and it is further ordered that the defendants pay the costs of both courts.

SPOFFORD, J., dissenting. *Primâ facie* a shipper of merchandise has not an insurable interest in the freight he contracts to pay for its transportation. For if the voyage be not accomplished the freight is not due.

Both policies disclose that one of the subjects of insurance in this case was "freight" insured *eo nomine* on behalf of the shipper. There is a distinct valuation of this risk in the policies.

So far, they appear on their face to be wager policies. The general issue, in my judgment, put the plaintiff upon explanatory proof of the feature in the policies declared upon, and he should have shown circumstances which would enable us to say that he had an insurable interest in the item thus separately valued. He thought it necessary to allege in his petition that the freight money was "paid in advance" by him. But he has not proved the fact, so that we are unable to decide whether this circumstance would of itself give him an insurable interest in the subject.

I, therefore, think the judgment should be affirmed.

LEA, J., dissenting. I see no reason to change the views expressed in the dissenting opinion rendered in the case of *Kennedy* v. *The New York Life Insurance Company.* I think that where the obligation sued upon is conditional upon its face, as in the case of a policy of insurance, that the general denial puts the plaintiff upon the proof of all the facts which are essential to convert the conditional obligation into one which is absolute. The contract of insurance is one of indemnity. If there was no loss there is no liability. Unless the plaintiff paid the freight in advance he has sustained no loss which can be the object of indemnity. The case would be different in a suit upon a promissory note, or other obligation importing an absolute liability on its face where, in the absence of a special defence, the document proves itself, and in most cases the mere possession is proof of title.

As respects the insurance of freight, I can see no good reason why money paid by a shipper of goods on account of freight to the owner of a ship should not be protected by insurance as constituting fairly an insurable interest, and though it may have been insured as freight, *eo nomine*, still I think that evidence of a custom to insure such an interest under the term "freight" would be admissible. The underwriters certainly intended to insure something when they received the premium, and they cannot consistently urge as a matter of defence that they were assuring an impossible risk. In the case at bar, however, it is not conclusively shown that the freight was paid in advance; and, in my opinion, there should be judgment as in case of non-suit upon the claim for insurance upon freight. In other respects I think the judgment should be affirmed.